IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **KROSS ACQUISITION COMPANY, LLC** <br> 10690 Loveland Madeira Road <br> Loveland, Ohio 45140 <br><br> *Plaintiff* <br><br> v. <br><br> **J & D HOME IMPROVEMENT INC.** <br> 13659 East Main Street <br> Reynoldsburg, Ohio 43068 <br><br> *Defendant.* | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | CASE NO. <br><br> JUDGE |

---

**PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND MONETARY DAMAGES**

---

For its Complaint for Declaratory Judgment and Money Damages against Defendant J & D Home Improvement Inc. ("Defendant" or "J & D"), Plaintiff Kross Acquisitions Company, LLC ("Kross" or "Plaintiff") hereby alleges as follows:

**NATURE OF THE ACTION**

1. This action arises from a dispute that emerged following the acquisition of J & D by an unknown private equity company. J & D has alleged Kross has breached the terms of a written Settlement Agreement entered into in 2017, which granted a license to Kross to use J & D's trademarked name in instances where it was used in conjunction with J & D's

1

        design mark. However, for the past seven years, Kross and J & D have operated under an oral and implied licensing agreement that governs the use of J & D's trademarked name, "The Basement Doctor" in connection with Kross' basement repair and waterproofing business. For the past seven years, Kross has openly and prominently used the trademarked name, "The Basement Doctor" alongside its *own* design mark. At all times pertinent to this litigation, J & D was fully aware of Kross' use of the trademarked name without the accompanying design mark, and J & D did not object to or attempt to enforce the design mark requirement from the 2017 Settlement Agreement, or otherwise seek to preclude Kross' activities.

2.     This arrangement and the parties' well-established course of conduct continued without issue until J & D was recently sold to a private equity company. Only after this change in ownership did J & D, for the very first time, under new management, raise concerns regarding Kross' use of the trademarked name without the design mark, contrary to the longstanding course of conduct between the parties. J & D has now demanded that Kross cease and desist all use of "The Basement Doctor" name and branding in relation to its basement repair and waterproofing business, purporting to terminate the Kross license agreement for cause.

3.     J & D's efforts to terminate Kross' license agreement is unlawful because Kross has complied with the terms of its oral and implied licensing agreement with J & D, and the parties well-established course of conduct. Kross has invested millions of dollars into the development of its business using the marketing materials and has fully paid J & D all of the royalties under the Settlement Agreement. J & D has directly benefitted from the goodwill and business development resulting from Kross' marketing efforts. Thus, Kross

is requesting declaratory judgment ruling it may continue using "The Basement Doctor" name in association with its basement repair and waterproofing business.

**JURISDICTION, VENUE, AND GOVERNING LAW**

5.Kross is an Ohio limited liability company with its principal place of business in Hamilton County, Ohio.

6.Upon information and belief, Defendant J & D is an Ohio Corporation with its principal place of business in Licking County, Ohio.  Kross has been unable to locate any information on the Ohio Secretary of State's website related to or otherwise providing any information about J & D.  But, based upon other information provided to Kross, including the trademark registration for the trademark implicated in this litigation, Kross believes J & D is an Ohio entity because those materials identify J & D as such.

7.This Court has jurisdiction under 28 U.S.C. § 1331 because it implicates the Court's federal question jurisdiction.  The declaratory judgment relief being sought in this case includes a determination that Kross' use of the images described herein does not violate the Lanham Act, 15 U.S.C. § 1051, et. seq..  J & D has explicitly asserted that Kross "has intentionally used elements of this Trademark . . . in direct violation of the Lanham Act . . . ."  (*See* Exhibit A attached hereto).  J & D has also asserted it intends to pursue litigation "for damages, willful infringement [of the trademark], and attorneys' fees."  (*See* Exhibit B attached hereto).  Thus, Kross has a reasonable apprehension of defending claims asserting violations of federal law, and therefore seeks declaratory judgment relief to address that issue.

8.This Court has personal jurisdiction over J & D because it has engaged in business activities within the Southern District of Ohio.

9. Venue is proper in this district because Plaintiff conducts business in the Southern District of Ohio and a substantial part of the events giving rise to the claims occurred within the Southern District of Ohio.

## FACTUAL ALLEGATIONS

10. This action arises from a dispute following the sale of J & D by Ronald Greenbaum ("Greenbaum") to a private equity entity.

11. Prior to the sale of J & D, Greenbaum was the owner of J & D, under which he established "The Basement Doctor"—a basement repair and waterproofing business based in Columbus, Ohio.

12. Robert Miles ("Miles") was employed by J&D d/b/a The Basement Doctor from 2002 until July 1, 2006 when Miles subsequently founded his own basement repair and waterproofing company—known as Kross Acquisitions Company, LLC—in the Greater Cincinnati, Ohio Area.

13. On July 1, 2006, Kross entered into a License Agreement with J & D.

14. Pursuant to the terms of the License Agreement, J & D agreed to grant Kross a royalty-free license to use "The Basement Doctor" trademark name and design mark in connection with Kross' basement repair and waterproofing company in the Cincinnati and Dayton, Ohio areas.

15. In 2016, a dispute arose concerning Kross' use of "The Basement Doctor" name, prompting J & D to file a lawsuit against Kross. Kross also initiated litigation against J & D in 2017. Those actions were ultimately consolidated into a single proceeding.

16. The parties reached a Settlement Agreement in December 2017. Under the terms of this Agreement, Kross was permitted to continue operating its basement repair and waterproofing business using J & D's registered trademark, "The Basement Doctor," subject to specific

4

conditions. A copy of the Settlement Agreement is not attached to this Complaint in order to protect and preserve the confidential terms of the Agreement and because J & D has a copy of the Agreement in its possession.

17. The conditions of the Settlement Agreement included operating only within designated geographic territories; using the trademark name and design mark exactly as employed by J & D; and Kross refraining from representing itself as "The Basement Doctor," and instead identifying as a business licensed to use "The Basement Doctor" branding. Additionally, Kross agreed to pay significant annual royalty fees to J & D as a part of the Settlement Agreement.

18. Despite the specific terms of the Settlement Agreement, the parties almost immediately thereafter reached an oral agreement allowing Kross to use "The Basement Doctor" brand name without J & D's original design mark of an old, bearded man wearing a red and blue ball cap.

19. For the following seven years, Kross has openly and prominently promoted its basement repair and waterproofing business under the name "The Basement Doctor" using a different visual identity, including advertising featuring a photo of Miles standing under a light blue and white umbrella, just as it had for the preceding ten plus years. At all times pertinent to this litigation, J & D was fully aware of and consented to Kross' use of the materials in its advertising and promotional materials.

20. Throughout this period, Kross continued to pay the required annual royalty fees to J & D, and J & D *never* objected to Kross' use of the modified design mark or its advertising practices. Kross has paid at least $1,181,449.15 to J & D for annual royalty fees, and will be paying in excess of $300,000 in May for the 2024 royalty payment. This course of conduct created

an implied license agreement under both Ohio and federal law with terms which were different than the terms of the 2017 Settlement Agreement.

21. Additionally, during the same timeframe, Kross invested substantial amounts of money into its marketing and promotional efforts using The Basement Doctor images and Mr. Miles' likeness. Kross has spent more than $8 million on its marketing and promotional activities since 2017. As a result of Kross' marketing efforts, Kross developed significant brand recognition and generated substantial goodwill for the business throughout the Greater Cincinnati region. J & D directly benefitted from Kross' extensive marketing efforts, including, but not limited to, deriving substantial revenue from royalty payments Kross made to J & D. Kross also fully honored the geographic restrictions set forth in the Settlement Agreement and never engaged in, or attempted to engage in, any business activities other than the territory identified in the Settlement Agreement.

22. On February 25, 2025, Kross received a "Notice of Material Breach" letter from J & D stating Kross had advertised and continues to advertise its services using J & D's "The Basement Doctor" trademark in purported violation of the Settlement Agreement. (A true and accurate copy of the February 25, 2025 letter is attached hereto as Exhibit A and incorporated by reference as if fully restated herein).

23. Specifically, J & D alleged that Kross had used elements of The Basement Doctor trademark, including its "look and feel, styles, symbols, styles, and colors" in its advertisements "in order to confuse the marketplace as to the source or origin of its services in direct violation of the Lanham Act" as well as the parties' 2017 Settlement Agreement.

24. On March 31, 2025, J & D issued a Termination Letter to Kross purporting to formally end the licensing agreement established in the parties' 2017 Settlement Agreement. (A

true and accurate copy of the March 31, 2025 letter is attached hereto as Exhibit B and incorporated by reference as if fully restated herein).

25. Additionally, on April 9, 2025, J & D sent correspondence to Kross demanding Kross cease and desist from activities involving use of the trademark. (A true and accurate copy of the April 9, 2025 letter is attached hereto as Exhibit C and incorporated by reference as if fully restated herein).

26. In the aforementioned letters, J & D demanded that Kross cease and desist from any further use of "The Basement Doctor" branding. J & D further asserted that Kross' continued use of the brand would constitute infringement of J & D's intellectual property rights. Additionally, J & D has directly communicated to website providers that Kross has "misappropriated" J & D's trademark, and instructed the website providers to immediately take down Kross' marketing materials from the websites.

27. J & D's demands are directly inconsistent with the parties' well-established course of conduct for at least the past seven years. At all times pertinent to this litigation, J & D was fully aware, or reasonably should have been fully aware, of Kross' activity and J & D fully consented to all aspects of Kross' conduct. Thus, Kross and J & D had a valid oral agreement or implied license which precludes J & D's efforts to terminate the relationship with Kross. Alternatively, J & D's efforts to terminate Kross are precluded by waiver, estoppel, detrimental reliance, and other applicable defenses.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment Relief)**

28. Plaintiff incorporates its allegations set forth above as if fully restated herein.

29. Under the federal Declaratory Judgment Act, this Court is authorized to "declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201.

30. There exists an actual controversy between Kross and J & D with respect to whether Kross violated its licensing agreement to use "The Basement Doctor" trademark and branding, and therefore infringing upon J & D's intellectual property rights.

31. Kross is entitled to a declaration that its use of "The Basement Doctor" trademark and branding has been within the use thereof agreed upon orally, through an implied license agreement, and via the well-established course of conduct between the parties over a period of at least seven years.

32. Kross is entitled to a declaration that it has not infringed any trademark owned by J & D, has fully paid for the use of "The Basement Doctor" name and branding for nearly twenty years, and that Kross has not violated any aspect of the Lanham Act.

33. Kross is entitled to a declaration that it may continue to advertise its basement repair and waterproofing business under "The Basement Doctor" name with the image of Miles under an umbrella, as it has done for at least the past seven years with J & D's approval, knowledge, and consent.

34. Kross is entitled to a declaration it has not breached the Settlement Agreement or any other agreement with J & D. Further, Kross is entitled to a declaration that since there has been no material breach of the Settlement Agreement, as modified by the subsequent oral agreement and well-established course of conduct between the parties, the Settlement Agreement and the license created therein cannot be terminated for cause.

35. To the extent the Settlement Agreement supports J & D's efforts to terminate the license, Kross is entitled to a declaration that J & D's efforts to declare a breach are precluded by waiver, estoppel, laches, detrimental reliance, and any other applicable equitable or legal defense developed during the course of this litigation.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

36. Plaintiff incorporates its allegations set forth above as if fully restated herein.

37. Kross and J & D reached an oral agreement and/or implied license agreement to allow Kross to use J & D's trademark in the manner Kross has used it for at least the past seven years.

38. At all times, Kross has fully complied with all aspects of the agreement between Kross and J & D.

39. J & D's efforts to try to terminate the agreement with Kross, and efforts to make Kross cease and desist from using the trademark information, is a material breach of the oral agreement or implied license between Kross and J & D.

40. As a direct and proximate result of J & D's breach of that agreement, Kross is entitled to declaratory judgment as outlined above. Additionally, or in the alternative, as a direct and proximate result of J & D's breach of the agreement, Kross has suffered damages in an amount to be determined at trial, but in excess of millions of dollars.

## THIRD CAUSE OF ACTION
### (Promissory Estoppel)

41. Plaintiff incorporates its allegations set forth above as if fully restated herein.

42. Kross relied to its detriment upon J & D's willingness to allow Kross for years to use the marketing and promotional materials Kross has used.

43. Kross has invested in excess of eight million dollars into developing its promotional materials and generating goodwill for its business based upon the use of the images depicting Miles contained in Kross' promotional and advertising materials. In fact, The Basement Doctor of Cincinnati currently has the largest market share in the Greater Cincinnati area for the basement waterproofing and foundation repair market.

44. J & D's abrupt change in position is directly inconsistent with the parties' clear understanding and well-established course of conduct over at least seven years. As a result, Kross has relied to its detriment upon J & D's promises and conduct.

45. As a result, J & D should be estopped from deviating from the promises and well-established conduct developed over years with Kross.

46. Alternatively, Kross is entitled to damages, in an amount to be determined at trial, for any harm resulting from its detrimental reliance upon J & D's promises and conduct.

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment)**

47. Plaintiff incorporates its allegations set forth above as if fully restated herein.

48. Kross conferred a benefit upon J & D by generating substantial brand identity and revenue for J & D by using the marketing and promotional materials for the past seven years.

49. J & D was fully aware, or reasonably should have been fully aware, of the promotional materials Kross was using.

50. J & D's abrupt decision to terminate Kross' license agreement will cause Kross to suffer substantial economic harm and monetary damages.

51. Accordingly, J & D has been unjustly enriched at the expense of Kross in an amount to be determined at trial.

WHEREFORE, Plaintiff Kross Acquisition Company, LLC respectfully requests relief as follows:

1. Declaratory judgment relief as set forth more fully in Count I above;

2. Compensatory damages in an amount to be determined at trial, but in excess of $8,000,000;

3. Reasonable attorney fees and litigation costs; and

4. Any other relief this Court determines is just or accurate.

                Respectfully submitted,

                *H. Toby Schisler*
                H. Toby Schisler, Esq. (0068306)
                E. Mackie Anderson (102255)
                DINSMORE & SHOHL LLP
                1900 First Financial Center
                255 East Fifth Street
                Cincinnati, Ohio 45202

                *Attorneys for*
                *Kross Acquisitions Company, LLC*

## **JURY DEMAND**

Plaintiff Kross Acquisition Company, LLC hereby demands a trial by jury on all issues so triable.

                *H. Toby Schisler*